UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shawyne Harris, Robert Taylor, and Sidney Dasent, individually and as representatives of a class similarly situated persons, on behalf of the Swiss Re Group U.S. Employee's Savings Investment Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>Swiss Re American Holding Corporation, the Board of Directors of the Swiss Re American Holding Corporation, the Swiss Re American Holding Corporation Governance & Nomination Committee, the Swiss Re American Holding Corporation Audit Committee, the Swiss Re American Holding Corporation Compensation Committee, the Swiss Re American Holding Corporation Finance & Risk Committee, the Swiss Re American Holding Corporation Investment Committee, and Does No. 1-30, whose names are currently unknown,<br><br>*Defendants*. | Case No. 1:22-cv-07059 (ALC) |

**REPLY IN SUPPORT OF SWISS RE DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
ARGUMENT ..... 2
A. Plaintiffs' Opposition Confirms That Their Recordkeeping Fee Allegations Fail to State a Claim ..... 2
B. Plaintiffs' Opposition Confirms That Their Investment Fee and Performance Allegations Fail to State a Claim ..... 5
C. Plaintiffs Should Not Be Granted Leave to File an Amended Complaint ..... 10
CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ...................................................................................................6

*Bekker v. Neuberger Berman Grp. LLC*,
    2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) .........................................................................8

*Cho v. Prudential Ins. Co. of Am.*,
    2021 WL 4438186 (D.N.J. Sept. 27, 2021) .............................................................................8

*Cunningham v. Cornell Univ.*,
    2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017), *appeal filed*, No. 21-88 (2d Cir.
    Jan. 13, 2021) ..........................................................................................................................9

*Ferguson v. Ruane Cunniff*,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) .........................................................................4

*Gonzalez v. Northwell Health*,
    --- F. Supp. 3d---, 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) ...................................4, 8, 9

*Locascio v. Fluor Corp.*,
    2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ............................................................................9

*Mator v. Wesco Distrib., Inc.*,
    2022 WL 3566108 (W.D. Pa. Aug. 18, 2022), *appeal filed*, No. 22-2552 (3d
    Cir. Aug. 23, 2022) ..................................................................................................................3

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ....................................................................................................6

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...................................................................................................6

*Milligan v. GEICO Gen. Ins. Co.*,
    2022 WL 433289 (2d Cir. Feb. 14, 2022).................................................................................4

*In re Omnicom ERISA Litig.*,
    2021 WL 3292487 (S.D.N.Y. Aug. 8, 2021) ............................................................................9

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .............................................................................8

*Singh v. Deloitte LLP*,
    2023 WL 186679 (S.D.N.Y. Jan. 13, 2023) ................................................................3, 4, 5, 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ..................................................................................................6

*St. Vincent v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..................................................................................................6, 8

*Youmans v. Schriro*,
    2013 WL 6284422 (S.D.N.Y. 2013)..........................................................................................5

*Young v. GM Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) .............................................................................................2, 6

**Statutes**

Employee Retirement Income Security Act ("ERISA"),
    29 U.S.C. §§ 1001-1461 ...............................................................................................1, 5, 6, 8

29 U.S.C. ¶ 1104(a)(1)(B) ...............................................................................................................1

**Rules**

Fed. R. Civ. P. 15(a)(1)(B) ...........................................................................................................10

# **INTRODUCTION**

Defendants' Motion to Dismiss ("MTD") explained how Plaintiffs' allegations fail to allege **_facts_** creating a **_plausible inference_** of an imprudent fiduciary process in violation of ERISA, as required under Second Circuit precedent. Among several wholly dispositive points Plaintiffs failed to rebut in their Opposition brief, Defendants argued:

1) Excessive recordkeeping fee allegations must plausibly allege that the fees were "excessive relative to the services rendered," and the sole support for Plaintiffs' recordkeeping fee claim are two surveys that do not account for recordkeeping services rendered (MTD at 16-17);

2) Excessive investment fee allegations must be based on a "meaningful benchmark" plausibly suggesting that Defendants were not monitoring investment fees, but Plaintiffs rely on meaningless "apples and oranges" comparisons (MTD at 17-20); and

3) Investment underperformance allegations must plausibly allege "consistent" underperformance, which Plaintiffs do not allege (MTD at 21-23).

Plaintiffs respond to none of these arguments. And they ignore almost all of the on-point precedent that dismisses allegations just like theirs. Instead, Plaintiffs try to flip the pleading burden on its head, arguing that Defendants have not "opine[d] on their investment methodology" or "provide[d] the Court with a complete understanding of how recordkeeping . . . works." Opposition ("Opp'n") at 1. That is not the standard. **_Plaintiffs_** must plead facts that plausibly creates an inference that Defendants acted out of step with fiduciaries in a "like capacity." 29 U.S.C. ¶ 1104(a)(1)(B). Despite ERISA's extensive disclosure requirements—as confirmed by Plaintiffs' multipage list of required disclosures (Opp'n at 13-15)—Plaintiffs have not brought forward such facts, and their Complaint, like other recent ERISA complaints in this and other Circuits, should be dismissed.

In the rare circumstances in which Plaintiffs engage with Defendants' arguments and relevant precedent, their response only confirms that Plaintiffs have not met their pleading burden. On recordkeeping, Plaintiffs impermissibly try expanding their claim to cover "recordkeeping **_and_**

*non-recordkeeping services*," which is not what they allege in the Complaint. And even if it was, they have no allegations about what other plans pay for ***non***-recordkeeping services, which does not allow the Court to make an apples-to-apples comparison from which to infer that what this Plan paid was excessive. Opp'n at 3, 8-9. On investment fees, Plaintiffs only defend the idea that the Plan could have chosen cheaper "share classes" for certain investments, but ignore the rebate associated with the JPMorgan Target Date Funds' ("JPM TDFs") share class and a decision dismissing an identical claim for just that reason. Finally, on investment performance, Plaintiffs have not met their ***pleading*** burden of comparing the challenged funds to a "meaningful benchmark" or alleging "significant," "consistent," and "10-year" underperformance.

Individually and taken together, Plaintiffs' allegations fall far short of creating a plausible inference of an imprudent fiduciary process, the touchstone of any fiduciary breach claim. Since Plaintiffs did not amend after Defendants' pre-motion letter, dismissal should be with prejudice.

## ARGUMENT

### A. Plaintiffs' Opposition Confirms That Their Recordkeeping Fee Allegations Fail to State a Claim

Defendants' opening brief established three reasons why Plaintiffs' allegation that the Plan paid more than $63 per participant for recordkeeping services does not plausibly raise an inference that Defendants failed to prudently monitor recordkeeping fees: (1) it is based on two surveys that are not "meaningful benchmarks," (2) it does not meet the Second Circuit's requirement of alleging "that the fees were excessive relative to the services rendered," and (3) documents on which Plaintiffs rely show that the Plan paid *less* than $63 per participant for recordkeeping fees. *Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009); MTD at 13-17. Plaintiffs do not respond to the first argument, and because the two surveys are Plaintiffs' only support for the notion that recordkeeping fees higher than $63 per participant suggests a fiduciary breach, the

2

Court can dismiss Plaintiffs' recordkeeping claim for this reason alone. *See* MTD at 15-16 (noting four cases rejecting excessive recordkeeping fee claims based on the same or similar surveys). That is because without any benchmark, let alone a meaningful one, the Court has no way of making a plausible inference that what Defendants paid for recordkeeping was excessive. *Id.*

Second, Plaintiffs do not dispute that they must allege that the Plan's recordkeeping fees "are excessive to the services rendered." Instead, in a single sentence in a footnote, Plaintiffs declare without support that they have done so. Opp'n at 3, n.1 ("Plaintiffs have alleged the Plan's RK&A services are the same services provided to other plans."). This conclusory assertion does not cut it. *See, e.g.*, *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *3 (W.D. Pa. Aug. 18, 2022), *appeal filed*, No. 22-2552 (3d Cir. Aug. 23, 2022) (finding that plaintiffs "offer only conclusory allegations on services" where they alleged that defendants' recordkeeper's services "are typical of the services provided to any large defined contribution plan") (citing 2:21-cv-00403, ECF No. 63 at ¶ 94).

Indeed, on the same day Plaintiffs submitted their opposition brief, Judge Koeltl dismissed an excessive recordkeeping fee claim advancing similarly conclusory allegations that "[n]early all recordkeepers in the marketplace offer the same range of services." *Singh v. Deloitte LLP*, 2023 WL 186679, at *5 (S.D.N.Y. Jan. 13, 2023). The court dismissed these allegations because, as here, they failed to detail "what recordkeeping services the 401(k) Plan received from [its recordkeeper]." *Id.* Just as in *Singh*, Plaintiffs have alleged nothing about the type, quality, or scope of the services Great-West provided to the Plan, nor do the two surveys they rely on capture that information about other recordkeepers. Thus, Plaintiffs leave the Court with no facts from which to plausibly infer that the Plan paid too much to Great-West for the services it provided. As other "[w]ell-reasoned decisions in this Circuit have found," Plaintiffs' recordkeeping claim should be

3

dismissed for failing to plausibly allege the Plan's "administrative fees were excessive relative to the services rendered." *Id*. (citing *Ferguson v. Ruane Cunniff*, 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019)). *See also Gonzalez v. Northwell Health*, --- F. Supp. 3d ----, 2022 WL 4639673, at *10 (E.D.N.Y. Sept. 30, 2022) ("A plaintiff must plead administrative fees that are excessive in relation to the ***specific services*** the recordkeeper provided to the ***specific plan*** at issue.").

Finally, Plaintiffs do not dispute that Defendants paid about $40 for recordkeeping to Great-West, ***less*** than the $63 Plaintiffs allege was reasonable (MTD 13-14), but instead argue that the Plan overpaid for "recordkeeping ***and non-recordkeeping services***." Opp'n at 3. They claim their allegations that the Plan paid excessive "recordkeeping and administrative (RK&A)" fees actually cover the fees paid to parties ***other than*** Great-West for services ***other than*** recordkeeping, and that administrative fees cover "accounting, legal, and trustee services." Opp'n at 8-9. This attempt to replead Plaintiffs' recordkeeping fee claim in their opposition brief fails.

As a threshold matter, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," and the Complaint did not allege that the Plan overpaid for recordkeeping ***and non-recordkeeping services***. *Milligan v. GEICO Gen. Ins. Co.*, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022); *see* Compl. ¶ 33 (contending "recordkeeping fees and RK&A fees ***are one and the same*** and the terms are used synonymously"); Compl. ¶ 58 (alleging Defendants failed to monitor "the compensation paid to Great West and ensure[] that participants were only charged reasonable RK&A fees"). Because Plaintiffs try for the first time in their opposition brief to have the "administrative" part of "RK&A" mean something other than recordkeeping fees, and because it is undisputed that the Plan paid less for ***recordkeeping*** than what Plaintiffs allege was reasonable, the Court can dismiss Plaintiffs' recordkeeping claim.

4

Moreover, *even if* Plaintiffs had alleged that the Plan paid excessive recordkeeping and non-recordkeeping fees, and *even if* Plaintiffs had defended their two surveys as meaningful benchmarks for recordkeeping fees, they still would not have stated a claim. That is because their surveys do not purport to calculate what other plans paid for recordkeeping ***and non-recordkeeping fees***, nor do the surveys or Plaintiffs' allegations address anything about the quality, scope, or type of legal, consulting, accounting, and auditing services the Plan or other plans received. Regardless of whether the Plan paid "$282.43," "$142.74," or some other amount for recordkeeping ***and*** non-recordkeeping services, the Court has no benchmark by which to infer whether that is more than what other plans paid for similar services. *Cf.*, *Singh*, 2023 WL 186679, at *5 (dismissing "disingenuous" and "plainly inapposite" allegations comparing direct and indirect compensation of defendant's recordkeeper to other recordkeepers' direct compensation).[1]

### B.  **Plaintiffs' Opposition Confirms That Their Investment Fee and Performance Allegations Fail to State a Claim**

As with Plaintiffs' recordkeeping fee allegations, Plaintiffs largely ignore the case law and arguments presented in Defendants' opening brief foreclosing their investment claims.[2] Instead, they try grafting new pleading standards onto ERISA, but nothing in ERISA requires that fiduciaries use "modern portfolio theory." Opp'n at 6-7, 18-20. Nor are Plaintiffs entitled to discovery simply because they believe ERISA's disclosure requirements "do not enable plan

---

[1] Relatedly, the Court need not engage with Plaintiffs' list of questions about revenue credits because they present no facts about what other plans do or do not pay in revenue credits. Opp'n at 11-12. Revenue credits are not part of Defendants' recordkeeping argument, and Plaintiffs' attempt to flip the pleading burden on its head by demanding discovery on their "unanswered" (and irrelevant) questions fails. Opp'n at 12. The question for the Court is whether Plaintiffs have plausibly alleged that Defendants failed to monitor recordkeeping fees, and, as explained, Plaintiffs have not done so.

[2] Plaintiffs waived their challenge to the American EuroPacific Growth and American Growth Fund by not responding to Defendants' arguments as to those funds. MTD at 10-11, 23; Opp'n (not mentioning the funds). *See, e.g.*, *Youmans v. Schriro*, 2013 WL 6284422, at *5 (S.D.N.Y. 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.").

5

participants to gauge a plan fiduciary's methodologies." *Id*. at 12-15. To the contrary, ERISA has "extensive disclosure requirements," (*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022)), as evidenced by Plaintiffs' multipage list of required disclosures and their admission that "caselaw suggests that the disclosures provide would-be plaintiffs with sufficient information." Opp'n at 13-15. And Plaintiffs have not offered a single case where allegations that fiduciaries failed to follow "modern portfolio theory" survived a motion to dismiss. In fact, the ***only*** reported ERISA case in the Second Circuit even mentioning "modern portfolio theory" ***dismissed*** the allegations. *See Young*, 325 F. App'x. at 32.

Plaintiffs also argue that they do not need to plead a "meaningful benchmark" (Opp'n at 16-17)—in other words, they get discovery so long as they allege that fund X outperformed or was cheaper than a Plan fund. But the meaningful benchmark standard was developed ***for*** motions to dismiss because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous." *St. Vincent v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Courts regularly apply the meaningful benchmark standard to assess whether allegations are plausible under *Iqbal* and *Twombly*. *See, e.g.*, *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022) (upholding dismissal of similar recordkeeping and investment claims for want of a "meaningful benchmark"); *CommonSpirit*, 37 F.4th at 1167 (same); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022) (same).

ERISA requires Plaintiffs to plead facts, based on the extensive disclosures they have access to, that would allow the Court to plausibly infer that Defendants failed to monitor the Plan's investments. MTD at 12-13. None of Plaintiffs' three investment theories meet that standard.

**Expense Ratio Claim**. Defendants' opening brief explained that the allegation that Plan funds were more expensive than the median expense ratio in a Brightscope/ICI Report lacks a

meaningful benchmark and provides only an "apples and oranges" comparison of the Plan's active funds to survey data that includes passive funds. *See* MTD at 17-20 (also explaining that the survey itself states "it is not intended for benchmarking"). Plaintiffs' two-paragraph response is unclear. Opp'n at 15. To the extent they are arguing the Report is just "background information," then their expense ratio claim fails because there is no benchmark at all. If they are arguing the Report is a benchmark, nothing in the Opposition shows why it is a meaningful one. As Defendants pointed out, numerous courts have rejected fiduciary breach claims premised on the Report because all it tells the Court is that active funds are more expensive than passive funds, which is of no moment because offering active funds is not a fiduciary breach. MTD at 19-20. Plaintiffs have offered no response to this case law or cases to the contrary. Indeed, Judge Koeltl recently rejected expense ratio claims based on the ICI Report. *See Singh*, 2023 WL 186679, at *6 (dismissing claim that plan's "expense ratios were unreasonably high" based on the "ICI Median"). Accordingly, Plaintiffs' expense ratio claim fails.

   **Lower Cost Share Class Claim**: Some investment funds are offered in the market in multiple "share classes," meaning the funds are similar except for the fees associated with them. MTD at 9-10. In response to the allegation that Defendants should have offered the "R6" share class of the JPM TDFs instead of the "R5" share class, Defendants explained that Plan disclosures relied upon by Plaintiffs show that the R5 share class is cheaper on net because it pays participants a rebate, and that another court dismissed *identical* allegations after accounting for the rebate. MTD 20-21. Plaintiffs do not dispute this fact and ignore this on-point precedent. They instead argue that "expense ratios reduce the fund's assets" and loss can be measured based on the difference in funds' fees, but this misses the point: Defendants' argument is that judicially noticeable documents demonstrate that the R5 share class *is* less expensive. Opp'n at 17-18.

7

Finally, Plaintiffs try salvaging their share class claim by tying it to their recordkeeping claim, but as discussed *supra* at 2-5, their recordkeeping allegations are implausible.

**Underperformance Claim**: Defendants' opening brief highlighted courts in the Second Circuit finding that ERISA fiduciary breach claims premised on underperforming investments only state a claim if the underperformance is "substantial," "consistent," and for a period of "ten years." MTD 21-23. Plaintiffs' opposition brief confirms their allegations do not meet these standards.

First, Plaintiffs concede that they have not alleged the JPM TDFs underperformed on a ten-year basis. Opp'n at 19. Their only response is to misread or otherwise disagree with the case law, but Plaintiffs offer no authority supporting their contrary opinion. They argue, for instance, that *Northwell* "states that 3- and 5-year trailing returns are insufficient but does not opine on a 7-year period." *Id*. This is misleading. *Northwell*, consistent with Second Circuit precedent, dismissed underperformance allegations because they lacked the requisite "***ten-year*** data that is a ***traditional hallmark*** of viable claims based on underperformance relative to an index." 2022 WL 4639673, at *8 (emphasis added) (citing *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019)). The seven-year period Plaintiffs hope to rely on, like three- and five- year periods, is less than ten. *Northwell* and other case law within the Second Circuit confirm that alleging imprudent investment decisions based on seven years of underperformance is an improper and insufficient "hindsight critique of returns." *St. Vincent*, 712 F.3d at 713 (citation omitted).

Second, underperformance must be substantial, and Defendants have identified in-jurisdiction case law finding underperformance of 0.96% to 2.57% to be insufficient to create an inference of fiduciary breach. MTD at 22.[3] Plaintiffs disagree with these cases, too, arguing they

---

[3] *See also Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *2, *7 (S.D.N.Y. Sept. 27, 2018) (retaining a fund that underperformed its benchmark by 4.48% over a ten-year period did not state a claim); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege

"neglect[] to consider the annualized effect of the losses" and that 1% underperformance is substantial. Opp'n at 25. Disagreeing with case law (and offering none to the contrary) is insufficient to survive a motion to dismiss. Plaintiffs concede the underperformance alleged here is less than alleged in cases like *Northwell*, and their investment performance claims also fail.[4]

Third, and relatedly, Plaintiffs do not dispute that the Complaint shows that the challenged funds had periods of *out*performance. MTD at 10-12. To the extent Plaintiffs are arguing that even occasional underperformance plausibly creates an inference that the fiduciaries failed to monitor a fund because of the "annualized effect" of underperformance, they cite no case to support that proposition. Opp'n at 25. Nor could they. As one court recently put it when dismissing similar claims, "[s]ometimes stocks underperform," and as district courts in the Second Circuit recognize, allegations of periodic underperformance do not state a claim. MTD at 22-23; *see also Locascio v. Fluor Corp.*, 2023 WL 320000, at *1 (N.D. Tex. Jan. 18, 2023).

In addition, consistent, substantial, and ten-year underperformance can only be shown by comparing the challenged fund to a "meaningful benchmark," which Plaintiffs' Opposition confirms they have not done. They offer no response to cases dismissing virtually identical allegations against the JPM TDFs for want of a meaningful benchmark. MTD at 23. Instead, Plaintiffs blithely contend that "[a]ll of the [target date] funds cited by the Plaintiffs use the Morningstar Lifetime Moderate 2030 index fund as a benchmark." But this is both incorrect and

---

"sufficiently substantial" underperformance to state a claim as to fund for which "five-year trailing performance had underperformance percentages ranging from .07% to 3.71%").

[4] Plaintiffs' reliance on *In re Omnicom ERISA Litig.*, 2021 WL 3292487 (S.D.N.Y. Aug. 8, 2021) and *Cunningham v. Cornell Univ.*, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017), *appeal filed*, No. 21-88 (2d Cir. Jan. 13, 2021) is misplaced. Plaintiffs stated an investment claim in *Omnicom* because they alleged underperformance of 3.5%, which is far greater than what is alleged here. 2021 WL 3292487, at *4. And *Cunningham* involved allegations of "ten year" underperformance, which Plaintiffs here have not alleged. *Cunningham*, 2017 WL 4358769, at *7.

irrelevant, as Plaintiffs' own exhibit shows. *See* ECF No. 37-2 at 2 (confirming JPM 2030 TDF uses the "S&P Target Date 2030 Index" and the "JPM 2030 Composite Benchmark").[5] And even if Plaintiffs' comparator funds did choose to measure their performance against the same index as the JPM TDFs (they do not), that does nothing to establish that the funds are sufficiently similar to provide a meaningful point comparison for evaluating the prudence of the JPM TDFs.

In summary, Plaintiffs have not identified any cases where allegations of inconsistent, insubstantial, and short-term periods of underperformance are sufficient to state a claim for a fiduciary breach, nor have they identified a meaningful benchmark for the challenged funds. Their investment allegations should be dismissed.[6]

### C. Plaintiffs Should Not Be Granted Leave to File an Amended Complaint

The Parties agree that when a plaintiff has "specific warnings" about a complaint's deficiencies and does not correct those deficiencies when given an opportunity to replead, the complaint is dismissed with prejudice. MTD at 4, n.2; Opp'n at 24. There is no question Plaintiffs received "specific warnings" in a pre–motion-to-dismiss letter on November 14, 2022 (the "Letter") and had an opportunity to replead as of right, which they declined. *See* FRCP 15(a)(1)(B). Therefore, the Complaint should be dismissed with prejudice.

---

[5] *Also compare* ECF No. 37-2 at 43 (citing to Morningstar reports, which use Morningstar's own Morningstar Lifetime Moderate benchmark for funds like the Vanguard 2030 Target Retirement Fund) *with* Ex. A at 5 (the Vanguard 2030 Target Retirement Fund summary fund prospectus) (reflecting its benchmarks are the "Target Retirement 2030 Composite Index," the "MSCI US Broad Market Index" and the "Bloomberg U.S. Aggregate Bond Index.").

[6] Plaintiffs' alternative legal theories also fail to state a claim. The Parties agree that if Plaintiffs' underlying fiduciary breach claim (Count I) fails, which it does, so too does the duty to monitor (Count II) and knowing breach of trust (Count III) claims. MTD at 24; Opp'n at 22. Plaintiffs also concede they have brought no loyalty claim by failing to respond to the argument that the Complaint lacks disloyalty allegations. MTD at 29.

## **CONCLUSION**

For all the above reasons and those set forth in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: February 2, 2023                                 Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

<u>/s/   Melissa D. Hill</u>

Melissa D. Hill
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
melissa.hill@morganlewis.com

*Attorney for Defendants*